# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RUKI KIKI VERAS,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:11-cv-1652-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for Supplemental Security Income. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## Procedural History

Plaintiff protectively filed an application for Supplemental Security Income on June 17, 2009[1] (R. 152-59). The claim was denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 90-92,94-95,101, 35-86). The ALJ issued an unfavorable decision on March 25, 2011 (R. 14-28). As the Appeals Council denied Plaintiff's request for review (R. 1-4), the ALJ's decision became the final decision of the Commissioner. Plaintiff filed her complaint in this action (Doc. No. 1), and the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. This case is now ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] The ALJ's decision references May 18, 2009, as the date the application was filed (R. 17). The application itself, however, is dated June 17, 2009. As the ALJ determined that Plaintiff was not under a disability since May 18, 2009, any inconsistency is not relevant.

## Nature of Claimed Disability

Plaintiff alleges disability due to Hepatitis C, status post Interferon treatment, bipolar disorder, depression, arm and leg numbness, and shortness of breath/COPD (R. 42, 66, 68, 181).

*Summary of Evidence Before the ALJ*

Plaintiff was forty-seven years old at the time of the hearing (R. 44), with a General Equivalency Diploma ("GED") and past relevant work experience as an assembler, fabricator, waitress, spot welder, and medical records employee (R. 44, 48-52,188-197).

Plaintiff's pertinent medical history is set forth in detail in the ALJ's decision and, in the interests of privacy and brevity, is set forth in this opinion only as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of her husband, the testimony of a Vocational Expert, written forms and reports completed by Plaintiff, and opinions from examining and non-examining consultants. By way of summary, the ALJ determined that Plaintiff had the severe impairments of: status post Hepatitis C treatment, bipolar disorder, depression, substance abuse disorder, and degenerative disc disease of the cervical spine (R. 19), and the record supports this uncontested finding. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appx. 1 (R. 20-22), and found that Plaintiff had the residual functional capacity ("RFC") to perform:

> less than the full range of light work as defined in 20 CFR 416.967(b). The claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant is able to sit for 6 hours and stand and/or walk for 6 hours in an 8-hour workday. The claimant has unlimited push/pull capability. The claimant is able to frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs. She is able to occasionally climb ladders, ropes, or scaffolds. The claimant needs to avoid pulmonary irritants. The claimant is able to perform simple, routine, repetitive tasks. The claimant is able to concentrate and persist for 2-hour segments. The claimant is limited to work that requires only occasional changes in the work setting and only occasional interaction with the public. The claimant is unable to meet fast paced, high production demands.

(R. 22).

The ALJ then determined that Plaintiff could not perform any past relevant work (R. 26-7). Relying on the testimony of a Vocational Expert, the ALJ found that there were other jobs in the national economy that Plaintiff could perform (R. 27-8). As such, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, since the date the application was filed (R. 28).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises three issues on review, contending that: 1) the ALJ erred in failing to provide adequate weight to the opinion of the treating physicians; 2) the ALJ failed to adequately consider the testimony of the claimant's husband, a lay witness, as required by the Social Security Regulations; and 3) the ALJ erred in failing to consider the side effects of the claimant's medications. The Court treats each objection in turn.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Here, the ALJ determined at Step 5 that Plaintiff could perform work in the national economy. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

*Opinion Evidence*

Plaintiff's first objection goes to the weight the ALJ gave to the medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the

nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally

entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, the ALJ evaluated the opinions of Plaintiff's treating physician Godson Oguchi M.D., and her treating psychiatrist, Edmundo Rivera, M.D. (R. 23-6). With respect to Dr. Oguchi, the record reflects that this physician successfully treated Plaintiff with Interferon following her diagnosis with Hepatitis C (R. 378-382, 429, 598-605). On January 21, 2011, Dr. Oguchi completed a Medical Source Statement (R. 677-680). As summarized by the ALJ:

> On the form, the doctor indicated that the claimant is not symptomatic and he noted that her prognosis is fair. However, he also indicated that the claimant experiences side effects from her hepatitis C treatment. The doctor noted that the claimant has experienced weakness and weight loss, and he opined that she would need to take unscheduled breaks to rest during the workday. He further opined that the claimant's symptoms are likely to be severe enough to interfere with the attention and concentration needed to perform even simple work tasks 25% of a typical workday, and the claimant is incapable of even "low stress" work due to depression and anxiety (Ex. 32F).

(R. 23).

The ALJ considered this opinion, but accorded it "little weight," for several reasons (R. 23-4). The ALJ cited a concern that the doctor relied too heavily on Plaintiff's subjective reports of her symptoms, noting that the medical evidence "does not contain the type of significant laboratory abnormalities one would expect if the claimant were in fact disabled." (R. 24). The ALJ noted that Dr. Oguchi reported that the claimant's Hepatitis C was asymptomatic and "the record indicates that the claimant's Hepatitis C viral load has been undetectable upon completion of the 44-week Interferon treatment (Ex. 24F)." The ALJ found Dr. Oguchi's opinion regarding claimant's mental impairments to be outside the area of his expertise and noted that the consultative examiner, a psychiatrist, "opined that the claimant has the ability to understand, remember, and carry out instructions (Ex. 8F)."

Plaintiff contends that these are not adequate reasons for discounting the opinion as Dr. Oguchi is an Infectious Disease specialist, "not an internist as noted by the ALJ," and the ALJ failed

to comprehend that it is the *treatment* that caused significant issues, not the actual Hepatitis virus. (Plaintiff's brief at 15-16).

According to the American College of Physicians,[2] an infectious disease specialist is "a doctor of internal medicine" who is qualified as an expert in the diagnosis and treatment of infectious diseases. Thus, the ALJ did not err in referring to Dr. Oguchi as an internist. As for Plaintiff's contention that the ALJ failed to recognize that the limitations complained of arose from her treatment and not the illness itself, she does not cite any support for this contention. Indeed, the Court finds the contention to be contrary to the record, which shows that the ALJ reviewed the treatment notes in detail in his decision, noting the course of Plaintiff's treatment and the alleged side effects of same:

> The claimant began treatment for chronic Hepatitis C on August 8, 2009 (Ex. 24F), and the claimant completed 44 weeks of Interferon treatment for Hepatitis. Thereafter, the claimant's hepatitis viral load was undetectable (Ex. 23F/3).
> On June 18, 2010, during the treatment for Hepatitis C, the doctor noted that the claimant was doing well and had no issues apart from weakness and weight loss (Ex. 24F/7). However, on January 22, 2010, the claimant complained of generalized body aches, weakness, and fatigability (Ex. 24F/I). On September 27, 2010, the treatment notes indicate that the claimant's Hepatitis C viral load was undetectable 3 months after therapy, and the doctor noted, "if [the claimant's viral load] remains undetectable 6 months post-therapy then she will be considered cured from Hepatitis C" (Ex. 24F/8). During the hearing, the claimant confirmed that the Hepatitis C viral load was undetectable in recent laboratory tests.
> During the treatment for Hepatitis, the claimant developed anemia (Ex. 22F and 24F), and in March 2010, the claimant was referred to Rene Cabeza, M.D., a hematologist, for the management of her anemia. In the evaluation, the claimant noted that she experiences weakness and lack of energy, and she elaborated that she has been having intermittent difficulties with depression secondary to Interferon therapy. The doctor recommended B12 injections and further testing for the anemia (Ex. 22F/I-3), and by May 14, 2010, the claimant's complete blood count (CBC) showed a hemoglobin of 11.2 and hematocrit of 35%, both within normal limits (Ex.22F/6).

(R. 23).

This summary, which references the substantial evidence of the treatment records (R. 561-605), supports the ALJ's determination that Plaintiff was successfully treated for her Hepatitis,

---

[2]http://www.acponline.org/patients_families/about_internal_medicine/subspecialties/infectious_disease/

without disabling symptomology.[3]  The ALJ evaluated the treatment records and opinion of Dr. Oguchi and set forth several reasons for discrediting the opinion.  As these reasons are supported by substantial evidence,[4] no error is shown.

Plaintiff next contends that the ALJ erred in giving the opinion of treating psychiatrist Edmundo Rivera, M.D., little weight (R. 26).  As set forth by the ALJ:

> On January 24, 2011, Edmundo Rivera, M.D., the claimant's psychiatrist, completed a Mental Medical Source Statement on behalf of the claimant. On the form, the doctor noted that the claimant has been diagnosed with bipolar I disorder, panic disorder without agoraphobia, and borderline personality disorder. The doctor indicated that the claimant is "unable to meet competitive standards" with regard to the mental abilities and aptitudes needed to do unskilled work, as well as semiskilled and skilled work. The doctor further indicated that the claimant is "unable to meet competitive standards" in her ability to interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, travel in an unfamiliar place, and use public transportation. The doctor explained that the claimant has a long history of recurrent symptoms, lability, and paranoid thinking that interferes with relationships. He also noted that the claimant is anticipated to be absent from work more than four days per month on average due to her impairments or treatments (Ex. 28F).

(R. 25).

The ALJ accorded this opinion little weight noting:

> the claimant testified that she has received treatment from Dr. Rivera for only four to five months. The undersigned finds that the doctor's assessment of the claimant's limitations in Exhibit 28F appears to be exaggerated. For example, the doctor stated that the claimant is "unable to meet competitive standards" in her ability to maintain socially appropriate behavior and adhere to the basic standards of neatness and cleanliness. However, Dr. Kirmani, the consultative examiner, noted that the claimant was able to relate and cooperate with him during the evaluation. He also noted that the claimant was appropriately groomed (Ex. 8F). In addition, in a February 16, 2010 examination, it was noted that the claimant was not depressed, anxious, or agitated

---

[3]Moreover, to the extent Plaintiff is contending that the treatment was disabling, the records reflect a 44 week course. Disability is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or *which has lasted* or can be expected to last *for a continuous period of not less than twelve months*.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.

[4]The records support the assessment of the ALJ that Plaintiff was asymptomatic throughout most of her treatment. *See, e.g.,* R. 378 ("she is doing well"); R. 429 ("she is doing well and is tolerating her medications"); R. 600 ("She is doing better otherwise and is tolerating her medications."), R. 566 ("At present she is asymptomatic and she continues tolerating her therapy with INTERFERON very well without major side effects or complications").  Moreover, with respect to mental limitations, Dr. Oguchi referred Plaintiff to her psychiatrist for "psyche management" (R. 599), consistent with the ALJ's finding that treatment for mental health issues was not within his expertise.

>   (Ex. 27F). In January 2009, the claimant was assigned a global assessment of functioning (GAF) of 60 from Dr. Raimondo (Ex. 2F/9), and in March 2010, the claimant was assigned a GAF of 54 from Adly Thebaud, M.D. (Ex. 2lF/4). According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Edition), a GAF of 51-60 reflects only moderate mental symptomatology. Another consideration is that on January 24, 2011, Dr. Rivera stated that the claimant has Hepatitis C and COPD as Axis III impairments. However, as of January 2011, the claimant's Hepatitis C had been successfully treated months earlier and the claimant had "essentially normal" pulmonary function tests. With all considered, Dr. Rivera's opinion is not consistent with the medical evidence, which fails to show the significant clinical findings one would expect given the claimant's alleged limitations.

(R. 25).

Plaintiff contends that "even the State Agency physician noted that [she] had limitations in regards to her social functioning" and, "aside from that fact, the reason provided for not finding the treating psychiatrist's opinion to have more than little weight is not adequate." (Plaintiff's Brief at 16). Plaintiff argues that giving great weight to the opinion of the state agency physicians over the treating providers was error in that "the opinion of a non-examining reviewing physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990).

The fact that the record includes other evidence which may support a contrary finding is of no moment. The standard is whether substantial evidence, not unanimous evidence, supports the finding. Here, the ALJ cited specific record evidence to support his conclusions. The ALJ noted the relatively brief history of treatment with this physician, the contrary findings of other examining physicians, and the absence of significant clinical findings supporting the opinion. These are, indeed, "adequate" reasons for discounting an opinion if, as here, the reasons are amply supported by record evidence. *See Winschel*, 631 F.3d at 1179. ("Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.").

Further, the citation to *Swindle* fails to persuade. While the ALJ did give weight to the opinion of state agency physicians, these opinions were not "taken alone." The ALJ's decision rests on much more than just reliance on the opinion of a non-examining consultant. The Court finds the weighing of the opinion evidence to be amply supported and in accordance with proper legal standards. No error is shown.

*Testimony of Plaintiff's Husband*

Plaintiff next contends that the ALJ failed to adequately consider the testimony of claimant's husband in that the ALJ "does not indicate the weight that the assigned to the opinion of Mr. Veras, who provided testimony at the hearing that would support the claimant's contentions." (Plaintiff's brief at 17).

In reaching a conclusion regarding a claimant's disability, the ALJ considers "all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons." 20 C.F.R. § 404.1529(c)(3). Inconsistencies or conflicts between a claimant's statements and the other evidence are also considered. *Id.* § 404.1529(c)(4). As the Eleventh Circuit Court has noted:

> The testimony of family members is evidence of a claimant's subjective feelings of pain. *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir.1983). Even if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony. *Id.* at 1254-55, *citing Allen v. Schweiker*, 642 F.2d 799 (5th Cir.1981).

*Osborn v. Barnhart*, 194 Fed.Appx. 654, 666 (11th Cir. 2006).

Although Mr. Veras was a lay witness and did not, as suggested by Plaintiff, offer an "opinion," the ALJ was obligated to consider and evaluate his testimony, along with the other evidence of record. As noted by the Commissioner, the ALJ did just that, by explicitly noting the

-10-

substance of the testimony in his decision[5] and implicitly finding it to be inconsistent with the medical evidence.[6] As this finding is supported by the substantial evidence identified in the decision, it is not disturbed. *See Osborn, supra* (holding that a specific credibility determination as to a claimant's testimony sufficiently implied a rejection of his wife's testimony as well).

*Side Effects of Medications*

Plaintiff's final contention is that the ALJ erred in failing to consider the side effects of medications. According to Plaintiff, although both Plaintiff and her treating physician noted that the Interferon treatment for her Hepatitis C caused significant side effects, "the ALJ does not even note these side effects in the decision." (Plaintiff's brief at 18).

As can be seen from the excerpts of the decision quoted above, the ALJ's decision contains numerous references to the alleged side effects Plaintiff experienced from her successful therapy. *See, e.g.* R. 22 ("During the hearing, the claimant testified that she sleeps most of the time because her psychotropic medications 'knock me out'"); and R. 23 ("[d]uring the treatment for Hepatitis C, the doctor noted that the claimant was doing well and had no issues apart from weakness and weight loss;" "the claimant complained of generalized body aches, weakness, and fatigability;" and "the claimant noted that she experiences weakness and lack of energy, and she elaborated that she has been having intermittent difficulties with depression secondary to Interferon therapy.") There is no support for the contention that the ALJ ignored the issue of side effects.

With respect to the evaluation of these alleged limitations, it is generally true that an ALJ has a duty to elicit testimony and make findings regarding the side effects of medication on the claimant's

---

[5]*See* R. 17 ("Also appearing and testifying were . . . Ralph Veras, the claimant's husband."), R. 21 ("The claimant's husband testified that the claimant is aggressive and has smashed his windshield in the past on several occasions."; "During the hearing, the claimant's husband testified that with the medication Depakote the claimant "sleeps and walks around like a zombie." However, he also noted that she is able to read novels and communicate with family members through the social network Facebook and e-mails.")

[6]Note the detailed analysis provided by the ALJ (R. 23-6) to support his finding that "the claimant's statements *and third-party statements* concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 23).

-11-

ability to work. *See Cowart v. Schweiker,* 662 F. 2d 731 (11th Cir. 1981). Although not addressed by Plaintiff, a claimant may establish that she has a disability through her own testimony regarding her pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Applied here, the ALJ considered the allegations of disabling side effects from the Interferon treatment, but found these assertions to be not credible to the extent they were inconsistent with the residual functional capacity assessment (R. 23). Plaintiff does not provide a basis to challenge this credibility finding. As noted by the Commissioner, although Plaintiff's treatment for her Hepatitis C *could* have caused significant side effects, the treatment records do not show that Plaintiff actually experienced disabling side effects for any consecutive twelve month period (R. 378-382, 429, 598-605). In fact, the treatment records indicate that, for the most part, Plaintiff was "tolerating her medications well" (R. 429, 566, 600), supporting the ALJ's finding that "despite the severity of the claimant's subjective complaints, there is minimal objective evidence of a disabling impairment." (R. 25). Moreover, the ALJ listed other reasons for discounting these allegations of disabling limitations, including Plaintiff's history of non-compliance with medical recommendations from her doctors (such as leaving the hospital against medical advice and being discharged from treatment due to

noncompliance), and supported these reasons with specific citation to record evidence (R. 25). As the ALJ noted the allegations of side effects, found Plaintiff's assertions of limitations greater than the RFC to be not credible, and supported this finding with substantial evidence, no error is shown.

A final note is in order. Although it is evident that Plaintiff has challenges and difficulties on many fronts, the only issue before the Court is whether the decision by the Commissioner is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, it must affirm the decision.

## Conclusion

For the reasons set forth above, the administrative decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

**DONE** and **ORDERED** in Orlando, Florida on November 1, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record